# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Michael S. Garland, Jr.,** <br> **Jacqueline L. Garland,** | Civil No. 09-71 (JNE/JJG) |
| Plaintiffs, | |
| v. | **REPORT** <br> **AND** <br> **RECOMMENDATION** |
| **Mortgage Electronic Registration Systems, Inc.,** | |
| Defendant. | |

| | |
|---|---|
| **Rudolph I. Peterson,** | Civil No. 09-72 (JNE/JJG) |
| Plaintiff, | |
| v. | |
| **Mortgage Electronic Registration Systems, Inc.,** | |
| Defendant. | |

| | |
|---|---|
| **Ryan P. Ward,** | Civil No. 09-342 (JNE/JJG) |
| Plaintiff, | |
| v. | |
| **Mortgage Electronic Registration Systems, Inc.,** | |
| Defendant. | |

| | |
|---|---|
| **David N. Skulbru,** <br> **Alicia M. Skulbru,** | Civil No. 09-430 (JNE/JJG) |
| Plaintiffs, | |

v.

**Mortgage Electronic Registration Systems, Inc.,**

    Defendant.

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on May 12, 2009 on the plaintiffs' motions to remand (Doc. No. 8 in 09-71; Doc. No. 10 in 09-72; Doc. No. 6 in 09-342; Doc. No. 6 in 09-430). John G. Westrick, Esq., appeared for the plaintiffs. Robert J. Pratte, Esq., and Sonya R. Braunschweig, Esq., appeared for defendant Mortgage Electronic Registration Systems (MERS). These motions are referred for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1.[1]

**A.    Introduction**

According to the pleadings, the plaintiffs purchased residential properties. To finance the purchases, as is customary for home sales, the plaintiffs executed promissory notes secured by mortgages. When the plaintiffs allegedly defaulted on the notes, MERS then proceeded with foreclosures by advertisement. In the course of the foreclosure proceedings, the properties have already been sold, but the plaintiffs currently remain in possession.

---

[1] Some federal case law suggests that a motion to remand is nondispositive, and therefore, a magistrate judge may decide the motion by an order. *See, e.g., Bellocchio v. Enodis Corp.*, 499 F.Supp.2d 254, 257 (E.D.N.Y. 2007); *Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas*, 397 F.Supp.2d 698, 702, 03 (W.D.N.C. 2005). But all the circuit courts to consider this question have held that a remand order is dispositive. *Vogel v. U.S. Products Co.*, 258 F.3d 509, 515-16 (6th Cir. 2001); *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998). And a published decision from this District takes the same position. *Haag v. Hartford Life & Accident Ins. Co.*, 188 F.Supp.2d 1135, 1136 (D.Minn. 2002). This Court concludes that a report and recommendation is proper here.

2

The plaintiffs commenced their litigation in Minnesota state district court, asserting that MERS is not the proper mortgagee and so it has no authority to foreclose. They seek declaratory judgments to that effect, among other equitable relief. Asserting diversity jurisdiction, MERS removed the cases to this District. The plaintiffs now move to remand, arguing that MERS has not established the requisite amount in controversy.

**B.    Discussion**

Diversity jurisdiction requires, among other things, that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). Where the amount in controversy is disputed, the proponent of federal jurisdiction must establish that amount by a preponderance of the evidence. Thus where a case has been removed to federal court, the burden is borne by the defendant. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Doubts about the amount in controversy are resolved in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997); *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D.Minn. 1998).

When an action involves declaratory or injunctive relief, and the plaintiff does not seek a particular amount of damages, the amount is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). This amount is determined from the perspective of the plaintiff. Thus a court should examine the value of the right the plaintiff seeks to enforce, or put differently, the object the plaintiff seeks to accomplish through litigation. *Advance America Serv. of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008) (favorably citing *Massachusetts State Pharm. Ass'n v. Fed. Prescription Serv., Inc.*, 431 F.2d 130, 132 & n. 1 (8th Cir. 1970)); *Smith v. American States Preferred Ins. Co.*, 249 F.3d 812, 813 (8th Cir. 2001) (also citing *Massachusetts State Pharm. Ass'n*).

The parties' disagreement, therefore, is about how to value the object of this litigation. The plaintiffs contend that this value is the "fair market value of the use of the property during the extended delay caused by the foreclosure." In practical terms, the plaintiffs propose that the value be calculated as the rental value of the property during their extended occupancy. Among other arguments, MERS counters that the value should be the properties' foreclosure sale price or the properties' fair market value.

The underlying question here, as a threshold matter, is the object of the litigation. Based on the pleadings, the plaintiffs' object is to invalidate the foreclosure sale by challenging MERS' authority to foreclose. So this Court must find the value to the plaintiffs should the foreclosure sale be invalidated. Two federal cases offer some guidance on this question.

One is a decision from the Ninth Circuit, *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074 (9th Cir. 1973); and the other is from the Eastern District of Pennsylvania, *Gatter v. Cleland*, 87 F.R.D. 66 (E.D.Pa. 1980). In both of these cases, the plaintiffs had defaulted on their mortgages; the defendants were proceeding with foreclosure; and the plaintiffs sought declaratory judgments on the validity of the foreclosure. *Garfinkle*, 483 F.2d at 1076; *Gatter*, 87 F.R.D. at 67-68.

The *Garfinkle* court observed that, because the litigation was attacking the lawfulness of the foreclosure, "the whole purpose of this action is to [prevent] the [defendant] from selling [the] property." *Id.* at 1076. It then observed that both the amount of indebtedness, and the fair market value of the property, exceeded the statutory threshold. Without ruling on which amount was dispositive, the court ruled that the defendant had met its burden to prove the amount in controversy. *Id.*

Relying in part on the *Garfinkle* decision, the *Gatter* court reached the same result. It determined that the underlying right was "the right to peaceful possession and enjoyment" of the

4

residence, and that "fair market value is as accurate a measure as any of its worth." *Id.* at 68-69. As the market value of the residence far exceeded the statutory requirement, the court found that the burden was met here as well. *Id.*

These decisions stand for the principle that, where there is a dispute about the validity of a foreclosure, the amount in controversy will either be the amount of the underlying debt or the fair market value of the property.

This principle is highly persuasive here. The fundamental dispute here is not about the right to occupy the property; it is about who owns the property. If the plaintiffs prevail, and they invalidate the foreclosures, then they will continue to own the property. If the plaintiffs lose, the foreclosure sale is valid and title passes to MERS and its successors. The most appropriate way to measure the value of this right is by value of the property itself.

Neither *Garfinkle* nor *Gatter* precisely decides whether the amount of outstanding debt, or fair market value, is the proper way to calculate value. But there is no need to decide between these methods here. MERS has submitted documentation, through affidavits, that establishes the requisite amount under either method. And the foreclosure sale prices, in particular, provide a reliable indication of fair market value.

Taking approximate amounts, this record shows that these values far exceed the required amount in controversy. In *Garland*, for instance, the debt was $350,000 and the property was sold for $400,000. In *Peterson*, the debt was $200,000 and the property was sold for $150,000. In *Ward*, both the debt and the sale price were near $125,000. In *Skulbru*, the debt was $300,000 and the sale price was $225,000. Even with doubts resolved in the plaintiffs' favor, the amount in controversy has been met.

The parties' arguments primarily focus on an Eighth Circuit case, *James Neff Kramper Family Farm Partnership v. IBP, Inc.* 393 F.3d 828 (8th Cir. 2005). Due to a surveying error, the defendant placed a groundwater well and air monitoring device on the plaintiff's property. The well and the device itself covered 12 square feet, affecting use of a 72 square foot parcel. Because the property had a nominal rental value, and no reasonable fair market value, the court ruled that the plaintiff failed to establish the amount in controversy. *Id.* at 832-33.

The plaintiffs here argue that, in accordance with *James Neff*, rental value is the proper measure of the amount in controversy. But MERS distinguishes *James Neff* as a trespass case involving the commercial use of a small parcel of property.

This Court concurs with MERS' position. *James Neff* was strictly about the unlawful use and possession of property, and the object of the litigation was to compensate the plaintiff for the trespass. Unlike the current matter, there was no question about ownership. So *James Neff* does not offer meaningful guidance here.

**C.     Recommendation**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the plaintiffs' motions to remand (Doc. No. 8 in 09-71; Doc. No. 10 in 09-72; Doc. No. 6 in 09-342; Doc. No. 6 in 09-430) be **DENIED.**

Dated this 18th day of May, 2009.         s/ *Jeanne J. Graham*

                                              JEANNE J. GRAHAM
                                              United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **June 3, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of

those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.